IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMY MARIE EDDINGTON, | ) | CASE NO.  1:24-CV-00564-JRA |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | MAGISTRATE JUDGE |
| SECURITY, | ) | JONATHAN D. GREENBERG |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |

Plaintiff, Amy Marie Eddington ("Plaintiff" or "Eddington"), challenges the final decision of Defendant, Martin O'Malley,[1] Commissioner of Social Security ("Commissioner"), denying her applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be VACATED AND REMANDED for proceedings consistent with this Report and Recommendation.

## I.  PROCEDURAL HISTORY

In June and October 2021, Eddington filed applications for POD, DIB, and SSI, alleging a disability onset date of July 30, 2020, and claiming she was disabled due to kidney problems,

---

[1] On December 20, 2023, Martin O'Malley became the Commissioner of Social Security.

1

gastrointestinal problems, toe and foot pain, low blood pressure, depression, anxiety, inability to drive, allergies, migraines, left ear deafness, learning disability, and comprehension problems.  (Transcript ("Tr.") 17, 59, 72.)  The applications were denied initially and upon reconsideration, and Eddington requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 17.)

On March 13, 2023, an ALJ held a hearing, during which Eddington, represented by counsel, and an impartial vocational expert ("VE") testified.  (*Id.*)  On March 29, 2023, the ALJ issued a written decision finding Eddington was not disabled.  (*Id.* at 17-23.)  The ALJ's decision became final on January 26, 2024, when the Appeals Council declined further review.  (*Id.* at 1-6.)

On March 26, 2024, Edington filed her Complaint to challenge the Commissioner's final decision. (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 9, 11-12.) Eddington asserts the following assignment of error:

(1) The ALJ erred at step 2, and the finding that Plaintiff had no severe medically determinable impairments was unsupported by substantial evidence.  The ALJ erred in her evaluation of the medical opinions and evaluation of Plaintiff's subjective allegations.

(Doc. No. 9.)

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Eddington was born in December 1964 and was 58 years-old at the time of her administrative hearing (Tr. 17, 59), making her a "person of advanced age" under Social Security regulations.  *See* 20 C.F.R. §§ 404.1563(e), 416.963(e).  She has past relevant work consisting of a composite job of cashier and floor worker.  (Tr. 53.)

**B.      Relevant Medical Evidence[2]**

On July 1, 2021, during a telephonic claim interview with Social Security, Eddington reported she did not go to the doctor or take any medication because she did not have insurance and lacked the ability to pay.  (*Id.* at 208-09, 215-16.)

In a function report dated July 23, 2021, Eddington reported she had not been able to control her bowels for a long time and ended up having accidents before she could make it to the bathroom.  (*Id.* at 224.)  She stated she was getting in trouble at work for having to leave work early as a result.  (*Id.*)  She also had trouble walking because of her back and it took her a few minutes to stand up straight.  (*Id.*)  She reported being on her feet was causing her legs to hurt.  (*Id.*)  She stated she was in "LD" classes in school because she was slower than others and was "constantly getting coached and yelled at for it."  (*Id.*)  Eddington reported that her problems got worse after she got sick and underwent surgery.  (*Id.*)  Regarding daily activities, she stated she did laundry once a week, cleaned the house, did the dishes, and took care of an elderly friend.  (*Id.* at 225.)  She helped her friend clean himself, she made food for him, and she helped him with his "affairs, such as paying bills."  (*Id.*)  She denied having problems with her personal care.  (*Id.*)  She shopped for groceries and watched television.  (*Id.* at 227-28.)  She interacted with others in person and on the phone at least once a day.  (*Id.* at 228.)  She reported it hurt to move when her back was hurting.  (*Id.* at 229.)  She also endorsed trouble hearing instructions, so she would end up doing something wrong.  (*Id.*)  She worried about getting into trouble, so it was hard for her to concentrate.  (*Id.*)  She could walk eight blocks before needing to rest for a few minutes.  (*Id.*)  She didn't always finish what she started.  (*Id.*)  She did not handle stress or changes in routine well.  (*Id.* at 230.)  She also reported getting three to four migraines a year, for which she took generic Aleve.  (*Id.* at 231.)

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

3

On September 5, 2021, Eddington underwent a physical consultative examination with James Gatton, M.D.  (*Id.* at 303-09.)  Eddington reported applying for disability based on bowel issues, which she had experienced since undergoing a cholecystectomy in 2012.  (*Id.* at 308.)  She told Dr. Gatton she alternated between constipation and diarrhea and had "a difficult time controlling her bowels."  (*Id.*)  Eddington also endorsed migraine headaches, left ear problems, and right foot pain.  (*Id.*)  On examination, Dr. Gatton found a soft, non-tender, non-distended abdomen with no evidence of organomegaly and normal bowel sounds, as well as a normal gait, normal strength, normal muscle tone, and normal range of motion.  (*Id.* at 309.)  Dr. Gatton opined:

> This claimant should be able to walk for four to five hours out of an eight-hour day. The claimant could probably be on her feet for a combined total of five to six hours out of an eight-hour day. The claimant probably could carry less than 15 pounds frequently and more than 30 pounds on occasion.

(*Id.*)

In a disability report dated October 13, 2021, Eddington stated: "I have to stop working because I was having accidents with my bowels at work which would cause me to leave work."  (*Id.* at 240.)

On January 7, 2022, Eddington saw Malaika Quick, CNP, for complaints of bowel habit changes and left lower quadrant abdominal pain.  (*Id.* at 328.)  Eddington reported constipation and diarrhea since 2012 when she underwent a cholecystectomy and that had been worsening over time.  (*Id.*)  She told Quick she had struggled with diarrhea and constipation for about 20 years and endorsed occasional bowel incontinence with diarrhea.  (*Id.*)  She reported having normal bowel movements, constipation, and diarrhea combined.  (*Id.*)  She also experienced left lower quadrant abdominal pain that radiated to her left lower back.  (*Id.*)  Eddington stated this pain had been occurring since her surgery as well.  (*Id.*)  She described the pain as sharp/dull and constant/waxing and waning, and over the counter medication provided some relief.  (*Id.*)  Eddington also endorsed intermittent nausea and vomiting.  (*Id.*)  She denied ever having had a colonoscopy.  (*Id.*)  On examination, Quick found normal bowel sounds, soft abdomen,

4

and abdominal tenderness. (*Id.* at 329.) Eddington's diagnoses consisted of bowel habit changes and left lower quadrant abdominal pain. (*Id.* at 330.) Quick referred Eddington to gastroenterology, ordered bloodwork and urinalysis, and prescribed a seven-day course of Flagyl and a 14-day course of Cipro. (*Id.*)

On July 6, 2022, Eddington underwent a psychiatric consultative examination with Bryan Krabbe, Psy.D. (*Id.* at 335-41.) Eddington reported having stomach problems and being a slow learner in school. (*Id.* at 336.) She applied for Social Security benefits on her own. (*Id.*) She told Dr. Krabbe she had gotten her GED, and she had a history of special education services for learning problems while in school. (*Id.*) She reported she had problems staying focused in school, but she had not been prescribed ADHD medication. (*Id.*) Eddington denied having been terminated from a job. (*Id.* at 337.) She stated her longest employment period was at Walmart, where she was a cashier and stocker for 25 years. (*Id.*) She reported difficulty learning previous jobs, but denied problems staying focused, completing tasks in a timely manner, getting along with supervisors and coworkers, and managing work stress. (*Id.*) She endorsed being sad and feeling worthless sometimes, and she worried about finances. (*Id.*) She lived with her boyfriend and her daughter financially supported her. (*Id.*) Eddington spent her time watching TV, sitting on the porch, and cleaning. (*Id.*) She managed her daily hygiene, did household chores, shopped for groceries, and prepared basic meals, although her physical pain slowed her down and she often had low motivation. (*Id.*) She reported struggling to remember appointments and medications. (*Id.*) She has never had a driver's license. (*Id.*) She denied regular social interaction with anyone outside her family. (*Id.*)

On examination, Dr. Krabbe found adequate grooming and hygiene, as well as adequate energy, and noted Eddington appeared to put forth good effort in completing the examination. (*Id.* at 337-38.) Eddington demonstrated normal speech and thought processes, euthymic mood, and full orientation. (*Id.*

at 338.)  She recalled seven digits forward and six digits backward; "[t]he ability to recall 4 digits backwards is considered average."  (*Id.*)  Dr. Krabbe further found:

> In terms of attention and concentration, she was able to count backwards from 100 by 7s for 4 iterations in 30 seconds with zero errors. Scores of five or more iterations suggest adequate attention and concentration. On a slightly simpler task of attention and concentration, she was able to count backwards from 20 by 3s in 6 seconds with zero errors. Scores of 15 seconds or less suggest adequate attention and concentration.

(*Id.*)  Intellectual testing consisting of the Wechsler Adult Intelligence Scale – IV (WAIS-IV) revealed intellectual functioning in the low average range.  (*Id.* at 339-40.)  Dr. Krabbe opined that Eddington's attention and concentration skills were satisfactory.  (*Id.* at 340.)  Dr. Krabbe determined there was no DSM-5 diagnosis.  (*Id.*)  Regarding Eddington's functioning, Dr. Krabbe opined:

> The claimant performed below average on a brief abstract reasoning activity, a task to assess difficulty understanding instructions. The claimant performed adequately recalling digits forward, a simple structured tasked to assess short-term memory. She was able to converse effectively to complete the evaluation. She reported problems with learning in school and received special education services, which may lead to difficulties acquiring new information in work settings. She reported problems with learning work related tasks including difficulty following directions and acquiring new information.
>
> * * *
>
> The claimant had difficulty completing serial 7s but effectively completed a serial 3s task, which suggests some difficulty with attention and focus. The claimant had no difficulty recalling digits backwards, a simple structured task to assess attention and concentration. Her Processing Speed Index on the WAIS-IV was in the average range, which suggests adequate attention and concentration. She displayed adequate task persistence when answering questions. She displayed no indication of distraction during the evaluation. She reported difficulty remembering appointments and medication. The claimant did not describe symptoms of depression or anxiety that could result in increased worry and a corresponding decrease in attention and concentration. She described a history of problems with attention and concentration in school. She did not describe a history of problems with attention and concentration within work environments.
>
> * * *

6

> The claimant functions within adequate limits of intellectual functioning to understand and respond to supervisor feedback and adequately relate to co-workers. On past work performance, she did not describe significant problems in responding appropriately to supervision and to coworkers in a work setting.
>
> * * *
>
> The claimant denied any significant history of behavioral or emotional deterioration in response to work pressure. She displayed appropriate responses and affect during the examination when discussing past and current pressures. She did not describe symptoms of depression or anxiety that would compromise her ability to respond to work pressures. She has never been psychiatrically hospitalized and is not currently prescribed psychoactive medication.

(*Id.* at 340-41.)

## C. State Agency Reports

### 1. Mental Impairments

On September 24, 2021, Aracelis Rivera, Psy.D., reviewed the file and opined that there were "no mental medically determinable impairments established." (*Id.* at 61.) Dr. Rivera further explained: "Clmt wants decision made on evidence in file. There is insufficient evidence to determine disability at this time." (*Id.*)

On July 12, 2022, on reconsideration, Janet Souder, Psy.D., reviewed the file and opined that there were "no mental medically determinable impairments established." (*Id.* at 67, 75.) Dr. Souder determined there was "now sufficient evidence to assess" medically determinable impairments, and a "psych MDI has not been established." (*Id.*)

### 2. Physical Impairments

On October 3, 2021, Steve McKee, M.D., reviewed the file and opined as follows:

> The clmt alleges disability due to: kidney, GI, toe and foot pain, LD, low blood pressure, depression, anxiety, unable to drive, allergies, migraines, L ear deafness. However, her IMCE was relatively WNLs and there is no MDI on file.

(*Id.* at 60.)

7

On July 13, 2022, on reconsideration, Mehr Siddiqui, M.D., reviewed the file and found Eddington's physical impairments to be non-severe. (*Id.* at 66, 74.) Dr. Siddiqui opined that the overall record evidence "supports the initial administrative findings of 'Not Severe.'" (*Id.*)

**D.    Hearing Testimony**

During the March 13, 2023 hearing, Eddington testified to the following:

- She got her GED. (*Id.* at 41.) She was in special education classes in school. (*Id.*) She does not have a driver's license. (*Id.*) She has never had a driver's license. (*Id.*)

- She had bowel issues before 2012, but in 2012, she got very sick and had to call off work one night. (*Id.*) She went to the hospital the next day. (*Id.*) She underwent emergency surgery to remove her gallbladder. (*Id.* at 42.) Her bowel issues seemed to get worse after that. (*Id.*) It got to the point where she was getting in trouble for going to the restroom. (*Id.*) Sometimes she would have accidents while she was sleeping, and she would not know it until she woke up. (*Id.*) She tended to call off because her bowels "were acting up." (*Id.*) It was getting to the point where she was going to get fired, so she had to quit. (*Id.* at 43.) One time she had to take off two to three days because it was so bad. (*Id.*) One time she went to the hospital and had to receive IV fluids. (*Id.*) That was after her surgery, but it got worse. (*Id.*) In 2020, she was calling off at least once a month. (*Id.*) She had to go to the restroom about three to four times a shift on top of normal breaks. (*Id.*) She never thought to use any kind of absorbance pads. (*Id.* at 44.) She was not taking any medications to help with her symptoms. (*Id.*)

- Last year she went to the doctor and received antibiotics after she was diagnosed with a stomach infection. (*Id.*) Her insurance refused to pay for lab samples. (*Id.*) She was put on more medication on March 3, 2023, for a severe bladder infection. (*Id.*) She completed that medication course the day of the hearing. (*Id.* at 45.) She was on two medications for five days. (*Id.*) Her doctor prescribed dicycloverine for stomach pain. (*Id.*) Sometimes her pain is not bad, and sometimes it is an 8 out of 10. (*Id.*)

- She continues to experience frequent urination. (*Id.* at 46.) She gets diarrhea once or twice a week, sometimes three to four times a day. (*Id.*) She gets constipated for three to four days. (*Id.*) She gets pain with diarrhea and constipation that sometimes affects her ability to stand and walk. (*Id.*) Resting relieves her pain. (*Id.*) She sometimes experiences vomiting as well, but it is not often. (*Id.* at 47.) She never tried over the counter medication for her symptoms as she was scared about how she would do with those. (*Id.*)

- She goes for a consult next week to talk to a nurse practitioner about a colonoscopy and a CT scan. (*Id.*)

8

- She lives in a room in a house.  (*Id.*)  She lives with someone, and she helps take care of their bills and the household chores in exchange for a room.  (*Id.* at 48.)  She helps clean the house and do the dishes daily.  (*Id.*)  She goes grocery shopping in stores.  (*Id.*)  Sometimes she must leave her basket behind because the need to use the restroom hits her suddenly.  (*Id.*)

- She can lift and carry any amount of weight.  (*Id.*)  Sometimes she gets abdominal problems when lifting and carrying.  (*Id.*)

- She no longer experiences depression and anxiety.  (*Id.* at 49.)  Sometimes she has short-term memory problems.  (*Id.*)  She does not have problems maintaining her attention and concentration.  (*Id.*)  She had problems understanding information or instructions when she was working.  (*Id.*)  She tends to stay to herself, but she talks to other people.  (*Id.*)

The VE testified Eddington had past work consisting of a composite job as a cashier and floor worker.  (*Id.* at 53.)  The ALJ then posed the following hypothetical question:

> For the first hypothetical, please assume an individual the same age, education, and work experience as the claimant.  This individual can perform medium work.  However, the lifting and carrying abilities would be reduced to lifting and carrying 30 pounds occasionally, and up to 15 pounds frequently.  In light of that limitation, would the individual be able to perform the claimant's past work as actually or generally performed?

(*Id.*)

The VE testified the hypothetical individual would not be able to perform Eddington's past work as a cashier and floor worker.  (*Id.*)  The VE further testified the hypothetical individual would be able to perform other representative jobs in the economy, such as lab equipment cleaner, receiving checker, and stubber.  (*Id.* at 54.)  The VE later amended that testimony and stated that there would be no medium exertion jobs with the reduction in lifting and carrying specified by the ALJ.  (*Id.* at 56.)

The ALJ then modified the hypothetical to limit the hypothetical individual to no more than five hours of standing and walking in an eight-hour workday.  (*Id.* at 54.)  The VE testified medium work would not be available.  (*Id.*)

The VE testified two unexcused absences for a full or partial day would be work preclusive.  (*Id.* at 55.)  The VE further testified no additional breaks would be allowed; that would be an accommodation and would be work preclusive.  (*Id.*)

### III.   STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

A claimant is entitled to a POD only if the claimant: (1) had a disability; (2) was insured when the claimant became disabled; and (3) filed while the claimant was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

A disabled claimant may also be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100, 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4)*,* 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that they are not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that they suffer from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c), 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful

activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent the claimant from doing their past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent the claimant from doing their past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g).

Here, Eddington was insured on the alleged disability onset date, July 30, 2020, and remains insured through December 31, 2025, the date last insured ("DLI"). (Tr. 17-18.) Therefore, in order to be entitled to POD and DIB, Eddington must establish a continuous twelve-month period of disability commencing between these dates. Any discontinuity in the twelve-month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2.  The claimant has not engaged in substantial gainful activity since July 30, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  There are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment (20 CFR 404.1520(c) and 416.920(c)).

4.  Nonetheless, even if the claimant could be considered to have a medically determined impairment, she does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months;

therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

5.      The claimant has not been under a disability, as defined in the Social Security Act, from July 30, 2020, through the date of this decision (20 CFR 404.1520(c) and 416.920(c)).

(Tr. 19-23.)

## V.  STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law

12

Judge must stand if the evidence could reasonably support the conclusion reached.").  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

In her sole assignment of error, Eddington argues that the ALJ erred at Step Two in finding Eddington had no severe medically determinable impairments. (Doc. No. 9 at 10.)  Eddington argues the ALJ's Step Two finding lacked the support of substantial evidence.  (*Id.*)  Eddington asserts that her

physical and mental impairments "caused more than slight abnormality and more than a minimal effect on [her] ability to work for a period of at least 12 consecutive months," surpassing the *de minimis* threshold at Step Two.  (*Id.*)  Eddington maintains that these errors are not harmless, as the ALJ ended the sequential evaluation at Step Two.  (*Id.*)  Therefore, remand is required.  (*Id.*)

The Commissioner responds that three state agency reviewing consultants reviewed the record and found that Eddington did not have a severe, medically determinable impairment or combination of impairments.  (Doc. No. 11 at 1.)  While two consultative examiners found Eddington had some limitations, neither examiner diagnosed Eddington with an "impairment from which those limitations stemmed."  (*Id.*)  In addition, although Eddington had insurance for at least part of the relevant period since her alleged onset date, she "only sought treatment once since mid-2020: she was prescribed antibiotics for an acute infection and was referred to a gastroenterologist for other, occasional symptoms that dated to 2012" and she failed to follow through on the referral.  (*Id.*)  This evidence, along with Eddington's activities of daily living, supported the ALJ's determination that Eddington did not have a severe, medically determinable impairment or combination of impairments and the denial of Eddington's claims at Step Two.  (*Id.* at 1-2.)

At Step Two of the sequential evaluation process, an ALJ must evaluate whether a claimant has a "medically determinable physical or mental impairment." 20 C.F.R. § 404.1520. A medically determinable impairment ("MDI") "results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. The impairment must also meet the durational requirement—"it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1520. If the ALJ finds that the claimant has an MDI, then the ALJ determines whether that impairment is severe. *Id.* "Once one severe

impairment is found, the combined effect of all impairments must be considered [in determining the claimant's residual functional capacity], even if other impairments would not be severe." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009).

The regulations define a severe impairment as one that significantly limits the ability to perform basic work activities. 20 C.F.R. § 404.1520(c). The severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522. Examples of "basic work activities" are "abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "seeing, hearing, and speaking"; "understanding, carrying out and remembering simple instructions"; "use of judgment"; "responding appropriately to supervision, co-workers and usual work situations"; and "dealing with changes in a routine work setting." 20 C.F.R. § 404.1522(b). The severity requirement is a "*de minimis* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Although the standard is *de minimis*, it is the claimant's burden at step two and a diagnosis alone "says nothing about the severity of the condition." *Id. See also Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 930 (6th Cir. 2007) ("The mere existence of those impairments, however, does not establish that [claimant] was significantly limited from performing basic work activities for a continuous period of time."). "Reasonable doubts on severity should be resolved in favor of the claimant. SSR 85-28, 1985 SSR LEXIS 19, at *4-7, 11-12 ('Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process

15

should not end [at Step Two]. Rather, it should be continued.')." *Mason v. Comm'r of Soc. Sec.*, Case No. 5:23-cv-331, 2023 WL 7386420, at *7 (N.D. Ohio Nov. 8, 2023).

At Step Two, the ALJ concluded there were "no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." (Tr. 19.)  The ALJ explained as follows:

> The claimant testified to, or elsewhere indicated an inability to work primarily due to bowel and bladder issues. She stated that she had her gallbladder removed in 2012 and since then, she has had episodes of urinary incontinence. She stated that she quit her job in July 2020, because she was going to get fired for missing too much work. She testified that she would go to the restroom three to four times per day in addition to normal breaks and that she would experience urinary incontinence, resulting in accidents while working. The claimant stated that she has stomach pain off and on, and she has episodes of diarrhea one to two times per week, as well as episodes of constipation that last three or four days. She stated that she has used medication, including over-the-counter medications to help relieve her reported gastrointestinal issues. Likewise, the claimant testified that she has not attempted to use absorbing products as she never thought to do so. The claimant also stated that she sometimes has issues with short-term memory.
>
> The record contains documentation of one medical visit to Third Street Family Health in January 2022. The claimant presented with complaints of occasional bowel constipation and diarrhea. She reported that these bowel changes were associated with lower left quadrant abdominal pain that waxes and wanes. On examination the claimant had normal bowel sounds and no abdominal distension. There was some abdominal tenderness, but the abdomen was soft and there was no rebound. No definitive diagnosis was offered as the claimant was assessed with "bowel habit changes" and "lower left quadrant abdominal pain" (Exhibit 6F/4-6). The claimant also underwent a medical consultative examination in September 2021. She reported that she alternates between diarrhea and constipation with difficulty controlling her bowels. The claimant's physical examination was unremarkable, and the examiner did not offer any type of medical diagnosis (Exhibit 2F).
>
> Additionally, the claimant underwent a psychological consultative examination, during which the claimant denied history of mental health treatment. She stated that she sometimes feels sad and occasionally worthless, and she worries about finances. The claimant was able to converse effectively to complete the evaluation. Her attention and concentration skills were satisfactory, and her intellectual functioning appeared to fall within the low average range. The examiner offered no diagnoses (Exhibit 7F).

> Though the claimant alleges bowel and bladder issues, there is no clear diagnosis associated with the claimant's alleged symptoms. Thus, the record does not establish a medically determinable impairment that would reasonably cause these symptoms given the lack of objective evidence, testing and treatment. Moreover, there is no evidence of mental health symptoms, findings, or diagnosis to support a medically determinable mental health impairment. Accordingly, there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment.

(*Id.* at 20-21.)

The ALJ then found that even if Eddington could be considered to have a medically determinable impairment, she did not have a severe impairment or combination of impairments.  (*Id.* at 21.)  The ALJ explained as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because they are not supported by the evidence. The claimant reported the frequency of her symptoms as "occasional" (Exhibit 6F/4). The medical records show generally normal physical examination findings without evidence of emergency room visits or acute symptom exacerbation. The claimant presented one time to her primary care provider. No treatment was prescribed and while, the claimant was referred for evaluation with a gastroenterologist, there is no evidence of follow-up. She testified that she is scheduled for a consultation; however, it is now over a year since the visit with her primary care. Additionally, the claimant reported that she has experienced these symptoms since 2012, yet the record shows that she worked full-time until she quit in 2020 (Exhibit 3E). Finally, the claimant reported performing a wide range of activities of daily living including doing laundry, washing dishes, cooking, and shopping for groceries (Exhibits 4E, 7E). Overall, the evidence does not show that the claimant's symptoms cause more than a minimal impact on her ability to perform work-related activity.

> With respect to the opinion evidence, the undersigned considered the State agency medical and psychological consultant opinions finding insufficient evidence to support a severe medical impairment and no evidence of a medically determinable mental impairment (Exhibits 2A, 4A, 5A). These opinions are consistent with the record, which shows a lack of objective findings and treatment. Accordingly, the State agency opinions are persuasive.

> The undersigned also considered the medical consultative examiner's opinion at Exhibit 2F. He indicated that the claimant should be able to walk four to five hours, be on her feet for a combined total of five to six hours and could probably carry less than 15 pounds frequently and more than 30 pounds occasionally. Such limitations are no supported by the examiner's normal

clinical findings nor are then consistent with the scant record which documents unremarkable physical exam findings and essentially no treatment. Accordingly, the examiner's opinion is not persuasive.

Finally, the undersigned considered the psychological consultative examiner's report at Exhibit 7F. He indicated that the claimant may have difficulties in various areas, which is entirely speculative, not based on objective exam findings, and contradictory to his finding of no diagnosis. Moreover, his opinion is not consistent with the record as a whole, which fails to indicate mental health symptoms or limitations. Accordingly, the examiner's opinion is not persuasive.

The conclusion that the claimant does not have an impairment or combination of impairments that significantly limits her ability to perform basic work activities, is consistent with the objective medical evidence and other evidence.

(*Id.* at 22-23.)

Regarding her mental impairments, Eddington argues in part that the ALJ erred when the ALJ "faulted [her] for not having supportive mental health treatment notes without considering reasonable justifications for not seeking treatment," such as her history of a learning disorder, her lack of insurance, and her inability to pay. (Doc. No. 9 at 17-18.) Therefore, remand is required. (*Id.* at 18.)

The Commissioner responds that the record shows Eddington had insurance for at least part of the relevant period since her alleged onset date and no treatment was recommended for her since she did not have a diagnosis. (Doc. No. 11 at 13.) Therefore, the ALJ's notation regarding Eddington's lack of treatment was reasonable. (*Id.*) However, assuming *arguendo* that the ALJ erred in considering Eddington's lack of treatment, any such error was harmless as the ALJ identified other substantial evidence to support the determination regarding Eddington's mental impairments. (*Id.* at 14.)

In reply, Eddington argues that the Commissioner "fails to explain why the ALJ was permitted to bypass the regulations and ruling regarding inability to afford care and other good reasons for not treating." (Doc. No. 12 at 3.) In addition, the Commissioner's response regarding her lack of treatment is

impermissible *post-hoc* rationalization, as the ALJ did not make such a finding regarding her insured status in the opinion.  (*Id.* at 3-4.)

Although the Commissioner argues that the Court need not consider Eddington's arguments that go to the ALJ's severity finding "unless it first finds that the ALJ erred in finding" no medically determinable impairments, the ALJ made additional findings that even if Eddington could be considered to have a medically determinable impairment, she did not have a severe impairment or combination of impairments.  (Tr. 21.)  Therefore, the Court proceeds to analyze Eddington's arguments regarding severity.

"The ALJ's decision does not comply with the Social Security Administration's instruction that ALJs must consider **why** an applicant's treatment history is inconsistent with her complaints when evaluating symptom severity."  *Jill L. v. Comm'r of Soc. Sec.*, Case No. 2:22-cv-02480, 2023 WL 4757601, at *8 (S.D. Ohio July 26, 2023) (emphasis in original).  Social Security Ruling ("SSR") 16-3p "requires an ALJ to consider possible reasons why a claimant failed to seek medical treatment consistent with the degree of his or her complaints 'before drawing an adverse inference from the claimant's lack of medical treatment.'"  *Id.* (quoting *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016)).  Such factors include an inability to afford treatment and a lack of access to free or low-cost medical services.  SOCIAL SECURITY RULING 16-3P TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS, 2017 WL 5180304, at *10 (Oct. 25, 2017).

As the Commissioner recognizes (Doc. No. 11 at 13), Eddington told a Social Security Administration representative that she "does not go to doctors or on any meds due to the lack of insurance and the inability to pay."  (Tr. 208, 215.)  Eddington's counsel informed the ALJ at the hearing that Eddington had insurance issues, which was noted in the record.  (*Id.* at 33.)  Eddington herself testified that when she went for treatment the year before for a stomach infection, the insurance she had would not

pay for the lab samples; as a result, she had to leave with urine samples in hand. (*Id.* at 44.) On March 3, 2023, her insurance did pay for lab samples, and she was then put on more medication for a severe bladder infection. (*Id.*) While the ALJ noted the "lack of objective evidence, testing and treatment," the lack of emergency room visits, the failure to follow up with a gastroenterology referral for over a year, and a "scant record" containing "essentially no treatment" (*id.* at 21-22), the ALJ failed to mention, let alone explain, why Eddington's treatment history (or lack thereof) is inconsistent with her allegations when considering her insurance issues and inability to pay. (*Id.* at 20-23.) Therefore, the ALJ failed to comply with SSR 16-3p. While the Commissioner argues that Eddington "had insurance for at least part of the period since the alleged onset date of disability" (Doc. No. 11 at 13), the ALJ did not so find (Tr. 20-23); therefore, the Court agrees with Eddington that this constitutes impermissible *post-hoc* rationalization. (Doc. No. 12 at 4.)

The Court agrees with Eddington that the ALJ further erred in considering that she continued to work despite her impairments in finding them not severe at Step Two. (Doc. No. 9 at 19.) "'[W]ork experience" should not be considered in determining whether an impairment is severe at Step Two of the sequential evaluation process. 20 C.F.R. § 404.1520(c) ('If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. *We will not consider your age, education, and work experience.*') (emphasis added)." *Jeffrey J. v. Comm'r of Soc. Sec.*, Case No. 1:20-cv-724, 2022 WL 856813, at *5 (S.D. Mar. 23, 2022).

Regarding whether the ALJ's errors were harmless, as this Court has recently explained:

> The Sixth Circuit has held that, so long as the ALJ considers all the claimant's impairments in the other steps, any Step Two error is harmless. *Nejat*, 359 F. App'x at 577 (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). However, it has not addressed the issue of harmless error when an ALJ has ended her analysis and determined there is no disability at Step Two. Other district courts have adopted an approach that

remand is nearly automatic when the ALJ erred at Step Two in finding that the claimant had no severe impairments and ended the analysis. *See, e.g.*, *Stone v. Colvin*, Civil Action No. 3:11-CV-1459-BH, 2013 U.S. Dist. LEXIS 70684, at *14-15 (N.D. Tex. May 20, 2013) (collecting cases); *see also Rollins v. Berryhill*, Civil Action No. 7:17-cv-00136-BP, 2018 U.S. Dist. LEXIS 74542, at *12-13 (N.D. Tex. May 2, 2018).

In this instance, the court is unable to find that the ALJ's Step Two error was harmless, because the ALJ cut short the sequential evaluation process and declined to fully consider Mason's disability allegations. *See Oeser v. Saul*, No. 1:19-cv-16286, 2021 U.S. Dist. LEXIS 94057, at *17-18 (D.N.J. May 18, 2021); *Butler v. Colvin*, No. 15-545, 2016 U.S. Dist. LEXIS 134651, at *29 (E.D. Pa. July 5, 2016). Given the low threshold of the Step Two inquiry, and its purpose to screen out "totally groundless claims," when a case is resolved at Step Two, it would be inappropriate to label such errors as harmless. *See Nejat*, 359 F. App'x at 576. The logical gaps in the ALJ's reasoning here were not harmless. Moreover, the lack of a logical bridge between the medical evidence and the ALJ's decision prevents Mason from sufficiently understanding the basis for the ALJ's negative findings, thus precluding her from being able to fully challenge the ALJ's reasoning, and it prevents this court from being able to meaningfully review the ALJ's decision. *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 257 (6th Cir. 2015); *see also Gross v. Comm'r of Soc. Sec.*, 247 F. Supp.3d 824, 830 (E.D. Mich. 2017). And the court cannot speculate that the error was harmless given the lack of further ALJ analysis.

*Mason*, 2023 WL 7386420, at *11.

The Court finds that such is the case here. Again, "[r]easonable doubts on severity should be resolved in favor of the claimant." *Id.* at *7. Therefore, the Magistrate Judge recommends the ALJ's decision be vacated and remanded for further proceedings consistent with this Report and Recommendation. As the Magistrate Judge recommends remand on these grounds, in the interest of judicial economy, the Magistrate Judge does not reach Eddington's other assignments of error.

## VII.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be VACATED AND REMANDED for further proceedings consistent with this opinion.

Date: November 22, 2024                              *s/ Jonathan Greenberg*
                                                     Jonathan D. Greenberg
                                                     United States Magistrate Judge


## **OBJECTIONS**

    **Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**